McKee v. James, 2015 NCBC 75.

STATE OF NORTH CAROLINA

COUNTY OF ROBESON

LANNESS K. McKEE and LANNESS K. McKEE, JR.,

Plaintiffs,

v.

HUNTINGTON JAMES and COCONUT HOLDINGS, LLC,

Defendants,

v.

LANNESS K. McKEE & COMPANY, INC.,

Nominal
Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 3031

ORDER AND OPINION ON
DEFENDANTS' VERIFIED BILLS OF
COSTS AND MOTIONS FOR
ATTORNEY'S FEES

{1}     **THIS MATTER** is before the Court upon (i) Defendant Coconut Holdings, LLC's ("Coconut Holdings") Verified Bill of Costs; (ii) Coconut Holdings's Motion for Attorney's Fees; (iii) Defendant Huntington James's ("James") (collectively with Coconut Holdings, "Defendants") Verified Bill of Costs (collectively with Coconut Holdings's Verified Bill of Costs, the "Verified Bills of Costs"); and (iv) James's Motion for Attorney's Fees (collectively, with Coconut Holdings's Motion for Attorney's Fees, the "Motions for Attorney's Fees") pursuant to which Defendants move this Court for an order awarding them the costs, expenses, and attorney's fees they reasonably and necessarily incurred in defending against the claims asserted by Plaintiffs Lanness K. McKee, Sr. and Lanness K. McKee, Jr. in the above-captioned case.

{2}     The Court, having considered Defendants' Verified Bills of Costs and Motions for Attorney's Fees, along with the parties' affidavits and

supporting and opposing briefs, makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**, and hereby **GRANTS** Coconut Holdings's Verified Bill of Costs, **GRANTS in part and DENIES in part** James's Verified Bill of Costs, **DENIES** Coconut Holdings's Motion for Attorney's Fees, and **DENIES** James's Motion for Attorney's Fees.

> *Brazil & Dunn, by K. Scott Brazil and Chad W. Dunn, and The Foster Law Firm, P.A., by Jeffrey B. Foster, for Plaintiffs.*

> *Poyner Spruill, LLP, by Joshua B. Durham and Jason B. James, for Defendant Huntington James.*

> *Bell, Davis & Pitt, P.A., by Edward B. Davis and Andrew A. Freeman, for Defendant Coconut Holdings, LLC.*

Bledsoe, Judge.

## I.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

{3} Defendants' Verified Bills of Costs and Motions for Attorney's Fees are filed in response to this Court's December 31, 2014 Order and Opinion on Defendants' motions for summary judgment ("Summary Judgment Order") by which this Court granted summary judgment in favor of both Defendants. The factual and procedural background relevant to the Court's consideration of these Motions is set forth in detail in the Summary Judgment Order, *McKee v. James*, 2014 NCBC LEXIS 74 (N.C. Super. Ct. Dec. 31, 2014).

## II.

### VERIFIED BILLS OF COSTS

{4} Defendant James filed his Verified Bill of Costs on April 17, 2015, seeking to recover $30,688.20 in costs and expenses from Plaintiffs. Similarly, Defendant Coconut Holdings filed its Verified Bill of Costs on May 14, 2015, seeking to recover $3,169.90 in costs and expenses from Plaintiffs.

{5} The time for filing a response brief in opposition to Defendants' Verified Bills of Costs expired without Plaintiffs filing a statement of opposition to either Defendant's Verified Bill of Costs. North Carolina

Business Court Rule 15.11 provides that "[i]f a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." Because Plaintiffs have not filed a response within the time required by this Rule, the Court considers and decides Defendants' Verified Bills of Costs as uncontested.

{6} Defendants seek recovery of their costs pursuant to N.C. Gen. Stat. §§ 6-1, 6-20, and 7A-305. Under North Carolina law, "[i]n actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court. . . . subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d) . . . ." N.C. Gen. Stat. § 6-20 (2014). Although § 6-20 appears to give the trial court "discretion" in determining whether to award costs enumerated in § 7A-305(d), the Court of Appeals has concluded that when construing §§ 6-20 and 7A-305 together, "the trial court is afforded no discretion in determining whether or not to award those costs enumerated under section 7A-305(d), and therefore, the trial court must impose the costs requested by defendant." *Khomyak v. Meek*, 214 N.C. App. 54, 57, 715 S.E.2d 218, 220 (2011).

{7} "The expenses enumerated in § 7A-305(d) constitute a 'complete and exhaustive' list" of "assessable or recoverable" costs under § 6-20. *McKinnon v. CV Indus.*, ____ N.C. App. ____, ____, 745 S.E.2d 343, 352 (2013) (quoting N.C. Gen. Stat. § 7A-305(d)). N.C. Gen. Stat. § 7A-305(d) allows a party to recover its costs for, *inter alia*, "[r]easonable and necessary expenses for stenographic and videographic assistance directly related to the taking of depositions and for the cost of deposition transcripts," mediator fees, "[r]easonable and necessary fees of expert witnesses solely for the actual time spent providing testimony at trial, deposition, or other proceedings," "fee[s] assessed . . . upon assignment of a case to a special superior court judge as a complex business case," and personal service and civil process fees. N.C. Gen. Stat. § 7A-305(d) (2014).

{8}     Defendant Coconut Holdings seeks to recover costs in the total amount of $3,169.90 as follows: (i) $2,619.90 for costs associated with stenographic and videographic assistance for depositions, transcripts, and videotapes and (ii) $550.00 for reimbursement of the mediator's charge.

{9}     Defendant James seeks to recover costs in the total amount of $30,688.20 as follows: (i) $25,751.40 for costs associated with stenographic and videographic assistance for depositions, transcripts, and videotapes; (ii) $550 for reimbursement of the mediator's charge, (iii) $1,479.50 for copies of documents from subpoenaed witnesses and fees for service of out-of-state subpoenas; (iv) $1,516.25 for filing fees, and (v) $1,391.05 for fees and travel expenses charged by Plaintiffs' expert witness, David McIntee ("Mr. McIntee").

{10}     The Court has undertaken a careful review of each item of costs Defendants seek to recover and has examined the evidence, including invoices and bills, Defendants have offered in support of their Verified Bills of Costs.  Based on that review, the Court finds that the costs and expenses Defendants incurred in defense of this action were reasonable and necessary, customary in amount, and not clearly excessive, and should thus be awarded, except as set forth below.

(i)     <u>Private Process Server Fees</u>

{11}     Under North Carolina law, "[f]ees for personal service by a private process server may be recoverable in an amount equal to the actual cost of such service or fifty dollars ($50.00), whichever is less, unless the court finds that due to difficulty of service a greater amount is appropriate."  N.C. Gen. Stat. § 7A-305(d)(6).  Here, James seeks to recover: (i) a $195.00 fee charged by a private process server, Gillon's Process Service, to serve a subpoena to produce documents on Paul Taylor; (ii) a $121.00 fee charged by a private process server, FOX Reporting, Inc., "for subpoena preparation and service on" Gary D. Kronrad; and (iii) a $101.00 fee charged by FOX Reporting, Inc. "for subpoena preparation and service on" Reese W. Baker.  (James's Verified

Bill of Costs, Exs. A & C.) Defendant James has not offered any evidence regarding difficulty of service or other explanation for why the Court should award a fee greater than $50.00 for personal service on Messrs. Taylor, Kronrad, and Baker by these two private process servers. As a result, the Court, in its discretion, elects not to assess Plaintiffs in excess of $50.00 for each instance of personal service by a private process server under § 7A-305(d)(6), and accordingly, will reduce James's request for service fees by $267.00 (*i.e.*, $195 plus $121 plus $101 minus $150).

(ii) <u>Expert Witness Fees</u>

{12} In assessing the "[r]easonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings" under N.C. Gen. Stat. § 7A-305(d)(11), "§ 7A-314 limits the trial court's broader discretionary power under § 7A-305(d)(11) to award expert fees as costs only when the expert is under subpoena." *Jarrell v. Charlotte-Mecklenburg Hosp. Auth.*, 206 N.C. App. 559, 563, 698 S.E.2d 190, 193 (2010); *Overton v. Purvis*, 162 N.C. App. 241, 250, 591 S.E.2d 18, 25 (2004) (excluding expert witness fees as costs where no evidence offered that expert witnesses had been subpoenaed; "'only witnesses who have been subpoenaed may be compensated'") (quoting *Holtman v. Reese*, 119 N.C. App. 747, 752, 460 S.E.2d 338, 342 (1995)).

{13} Further, when awarding expert witness fees, the trial court cannot "assess costs for an expert witness' preparation time," *Springs v. City of Charlotte*, 209 N.C. App. 271, 284, 704 S.E.2d 271, 328 (2011), but "may consider in its discretion whether to award 'expert fees for an expert witness' time in attendance at trial even when not testifying' and 'travel expenses for experts' according to the provisions of N.C. Gen. Stat. § 7A-314 (2009)," *Khomyak*, 214 N.C. App. at 68, 715 S.E.2d at 226–27 (citing *Springs*, 209 N.C. App. at 283–84, 704 S.E.2d at 328). "In sum, before a trial court may assess expert witness testimony fees as costs, the testimony must be (1) reasonable, (2) necessary, and (3) given while under subpoena." *Lassiter v.*

*N.C. Baptist Hosps., Inc.*, ____ N.C. App. ____, ____, 761 S.E.2d 720, 723 (2014) (quoting *Peters v. Pennington*, 210 N.C. App. 1, 26, 707 S.E.2d 724, 741 (2011)).

{14}    Defendant James's Verified Bill of Costs establishes that Plaintiff's expert, Mr. McIntee, testified under subpoena; accordingly, James is entitled to seek Mr. McIntee's fees as costs under § 7A-305(d)(11). *See Jarrell*, 206 N.C. App. at 563, 698 S.E.2d at 193; *Lassiter*, ____ N.C. App. at ____, 761 S.E.2d at 723.

{15}    The evidence Defendant James offers to support his request for Mr. McIntee's fees – an invoice from Mr. McIntee's firm attached as Exhibit E to James's Verified Bill of Costs – identifies Mr. McIntee's services as "[p]reparation for and [to] provide deposition testimony," for which he charged "5-1/2 hours @ $250.00/Hr." totaling $1,375.00, "Plus: Out of Pocket Expenses (Mileage)" totaling $16.05, without any further identification of the time spent. (James's Verified Bill of Costs, Ex. E.)

{16}    Although not referenced by Defendant James, a copy of Mr. McIntee's deposition transcript is attached to James's earlier January 31, 2014 Motion to Exclude Plaintiffs' Expert Witness Affidavits and Testimony and thus is part of the record before the Court. Mr. McIntee's deposition transcript indicates that his deposition commenced at 11:08 A.M. and ended at 1:59 P.M. on Wednesday, December 11, 2013, with one brief recess. (Def. James's Mot. Exclude Pls.' Expert Witness Affidavits and Testimony, attached Depos. of David G. McIntee.) The Court therefore concludes that Mr. McIntee spent 2 hours and 51 minutes at his deposition. Mr. McIntee charged Defendant James $250.00 per hour for his deposition testimony, (James's Verified Bill of Costs, Ex. E), and thus, Mr. McIntee's total charge for his time spent testifying and at his deposition equals $712.50 (*i.e.*, 2.85 times $250). The Court finds that the time Mr. McIntee spent testifying was reasonable and necessary and will allow James's request to assess these fees as costs. *See Khomyak*, 214 N.C. App. at 68, 715 S.E.2d at 226–27 (court

may consider expert witness fees for attendance at trial, even when expert is not testifying); *see also Town of Chapel Hill v. Fox*, 120 N.C. App. 630, 632, 463 S.E.2d 421, 423 (1995) (in assessing fees, "[w]e discern no meaningful difference between an expert who is called to testify at trial and an expert who is called to testify at a deposition.").

{17}    Mr. McIntee's remaining time, however, apparently was spent preparing for his deposition, which our courts have made clear is not recoverable as costs. *See, e.g.*, *Springs*, 209 N.C. App. at 284, 704 S.E.2d at 328.  In any event, because Defendant James has failed to offer proof that Mr. McIntee's remaining 2.65 hours of billable time was spent testifying or in activity for which recovery is permitted, the Court will disallow James's request for payment of these fees (*i.e.*, 2.65 hours times $250/hour equals $662.50). *See, e.g.*, *Simon v. Simon*, ____ N.C. App. ____, ____, 753 S.E.2d 475, 482 (2013) (affirming trial court's rejection of expert fee request because "plaintiff failed to prove how much [of expert's] time was devoted to her testimony as opposed to travel and preparation").

{18}    In addition, Mr. McIntee billed James $16.05 for travel expenses, but James has not provided any evidence to show that recovery of these expenses is proper under N.C. Gen. Stat. § 7A-314(b).  Specifically, James has offered no evidence of Mr. McIntee's residence, and the business address that appears on his invoices (Hillsborough, North Carolina) and the place of his appearance for deposition (Chapel Hill, North Carolina) are both in Orange County, North Carolina.  Accordingly, Defendant James has failed to carry his burden to show that recovery of Mr. McIntee's travel expenses are proper here, and the Court will therefore disallow James's request. *See Springs*, 209 N.C. App. at 284, 704 S.E.2d at 328 ("the trial court has discretion to award travel expenses for experts as provided under N.C. Gen. Stat. § 7A-314(b)"); *Khomyak*, 214 N.C. App. at 68, 715 S.E.2d at 226–27 (same).[1]

---

[1] N.C. Gen. Stat. § 7A-314(b) provides, in relevant part, "(b) A witness entitled to the fee set forth in subsection (a) of this section . . . shall be entitled to receive reimbursement for travel

{19}     In sum, the Court will reduce Defendant James's request for expert witness fees and charges by $662.50 for Mr. McIntee's charge for his non-testifying time (2.65 hours times $250/hour)) and by $16.05 for Mr. McIntee's travel expenses.

(iii)     <u>Filing Fees</u>

{20}     By the Court's calculation, the total amount of allegedly assessable and recoverable filing fees reflected in the bills and invoices attached as Exhibit D to Defendant James's Verified Bill of Costs equals $1,156.25 – not $1,516.25 as set forth in Defendant James's Verified Bill of Costs.  As a result, the Court will reduce James's request for filing fees by $360.00 (i.e., $1,516.25 minus $1,156.25).

{21}     In addition, although N.C. Gen. Stat. § 7A-305(d)(12) allows for reimbursement of the fee payable when a case is assigned to a special superior court judge as a complex business case, this provision was added by the Business Court Modernization Act (the "Act"), which applies to actions commenced or filed after October 1, 2014, *see* §§ 4, 9, 2014 N.C. Sess. Laws 102, and not to actions, like the instant case, which were commenced or filed prior to that date.[2] *See, e.g.*, *Wortman v. Hutaff*, 2014 NCBC LEXIS 73 at *6 (N.C. Super. Ct. Dec. 31, 2014) ("If a case was commenced or filed before [October 1, 2014], those costs may not be taxed against a plaintiff because there was no express provision providing for the taxation of Business Court designation costs as the statute existed prior to the Act.").  As a result, the Court will further reduce James's request for filing fees by $1,000.00, the amount James has sought for reimbursement of the Business Court filing fee James paid in 2009 upon designation of this case as a complex business case.

expenses as follows: (1) A witness *whose residence is outside the county of appearance* but within 75 miles of the place of appearance shall be entitled to receive . . . .  (2) A witness *whose residence is outside the county of appearance* and more than 75 miles from the place of appearance shall be entitled to receive . . . ." (emphasis added).

[2] This action was filed on August 27, 2009 and designated a as a mandatory complex business case on October 19, 2009.

{22}     In summary, and based on the above, the Court concludes that (i) Defendant Coconut Holdings should be awarded the total amount sought in its Verified Bill of Costs and is therefore entitled to recover from Plaintiffs costs in the amount of $3,169.90, and (ii) Defendant James should be awarded the total amount sought in his Verified Bill of Costs, less the reductions described above, and is therefore entitled to recover from Plaintiffs costs in the total amount of $28,382.65 ($30,688.20 requested minus $267.00 (excess private process server fees) minus $662.50 (non-testifying expert witness fees) minus $16.05 (unsupported expert witness travel expenses) minus $360.00 (filing fee mathematical error) minus $1,000.00 (non-recoverable filing fee)).

III.

MOTIONS FOR ATTORNEY'S FEES

{23}     Defendant James filed his Motion for Attorney's Fees on June 17, 2015, seeking to recover from Plaintiffs $752,345.50 in attorney's fees. Defendant Coconut Holdings filed its Motion for Attorney's Fees on June 22, 2015, seeking to recover from Plaintiffs $100,144.00 in attorney's fees.  On July 7, 2015, Plaintiffs joined together and filed a Response Brief in Opposition to Defendant James's Motion for Attorney's Fees and a Response Brief in Opposition to Defendant Coconut Holdings's Motion for Attorney's Fees.  Defendant James filed his Reply Brief in Support of his Motion for Attorney's Fees on July 17, 2015.[3]   The time for further briefing and submissions on Defendants' Motions for Attorney's Fees has now passed and the Motions for Attorney's Fees are ripe for resolution.

{24}     "[T]he general rule in North Carolina is that a party may not recover its attorney's fees unless authorized by statute." *Martin Architectural Prods., Inc. v. Meridian Constr. Co.*, 155 N.C. App. 176, 181, 574 S.E.2d 189, 192 (2002) (citing *Bailey v. State*, 348 N.C. 130, 159, 500

---

[3] Defendant Coconut Holdings did not file a Reply Brief in Support of its Motion for Attorney's Fees.

S.E.2d 54, 71 (1998)). Thus, "in the absence of statutory authority . . ., a court may not include an allowance of attorney['s] fees as part of the costs recoverable by the successful party to an action or proceeding." *In re King*, 281 N.C. 533, 540, 189 S.E.2d 158, 162 (1972) (citations omitted). "Statutes that award attorney's fees to the prevailing party are in derogation of the common law and as a result, must be strictly construed." *Barris v. Town of Long Beach*, 208 N.C. App. 718, 722, 704 S.E.2d 285, 289 (2010) (citing *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 257, 400 S.E.2d 435, 437 (1991)).

{25}    Defendants move the Court pursuant to N.C. Gen. Stat. §§ 55-7-46(2), 66-154(d), and 75-16.1 to recover their reasonable attorney's fees expended in defending this action. The Court will address each of Defendants' arguments in turn.[4]

i.    <u>N.C. Gen. Stat. § 55-7-46(2)</u>

{26}    Defendants first argue they are entitled to recover their attorney's fees pursuant to N.C. Gen. Stat. § 55-7-46(2), which provides in pertinent part, "[o]n termination of the derivative proceeding, the court may . . . [o]rder the plaintiff to pay any defendant's reasonable expenses, including attorney's fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose." N.C. Gen. Stat. § 55-7-46(2) (2014). Defendants specifically contend here that Plaintiffs commenced or maintained this action "without reasonable cause."

{27}    The only North Carolina case the Court has found applying N.C. Gen. Stat. § 55-7-46(2) is Judge Jolly's decision in *Sutton v. Sutton*, 2011 NCBC LEXIS 44 (N.C. Super. Ct. Nov. 22, 2011). In *Sutton*, Judge Jolly did

---

[4] Defendant Coconut Holdings "incorporates by reference the Motion for Attorney's Fees filed by Hunt James in this matter including supporting brief and other related filings," (Def. Coconut Holdings Mot. for Atty's Fees, p. 1), and thus, submits that Defendants' arguments should be considered together.

not seek to offer a definition of the phrase "without reasonable cause" but nonetheless concluded that where plaintiff's complaint was, "on its face . . . seriously deficient and subject to dismissal on several grounds" and where plaintiff "clearly lacked standing," plaintiff had commenced and maintained his derivative action "without reasonable cause." *Id.* at \*18. The Court does not find Plaintiff's Complaint and Amended Complaint similarly deficient here, and thus *Sutton* is of limited guidance in considering Defendants' request for costs under § 55-7-46(2).

{28} The Court of Appeals, however, has offered a definition for "without reasonable cause" in a recent decision interpreting a similar provision in the North Carolina NonProfit Corporation Act, N.C. Gen. Stat. § 55A-1-01, *et seq.* (2014). *See McMillan v. Ryan Jackson Props., LLC*, \_\_\_\_ N.C. App. \_\_\_\_, \_\_\_\_, 753 S.E.2d 373, 378 (2014) (construing N.C. Gen. Stat. § 55A-7-40). In *McMillan,* the Court of Appeals concluded that "without reasonable cause" in the nonprofit corporation derivative action context means that plaintiffs had "no 'reasonable belief' in a 'sound chance' that the claim[s] could be sustained." *Id.* at \_\_\_\_, 753 S.E.2d at 378.[5] The *McMillan* Court affirmed a finding that the derivative action there had been commenced and maintained "without reasonable cause" because plaintiffs had failed to offer any evidence that defendants' work was the proximate cause of the damages plaintiffs had suffered. *Id.* at \_\_\_\_, 753 S.E.2d at 379. The Court of Appeals thus concluded that plaintiffs could not have had a "reasonable belief that there was a sound chance" that their claims could be sustained. *Id.* at \_\_\_\_ 753 S.E.2d at 378–79 (quotations and citation omitted).

---

[5] N.C. Gen. Stat. § 55A-7-40 was identical to the attorneys' fees provision in the analogous context of a business corporation derivative action under the North Carolina Business Corporation Act, N.C. Gen. Stat. § 55-55(e), until § 55-55(e) was replaced by N.C. Gen. Stat. § 55-7-46. *See Lowder on behalf of Doby v. Doby*, 79 N.C. App. 501, 511, 340 S.E.2d 487, 493 (1986) ("In any such action the court, upon final judgment and a finding that the action was brought without reasonable cause, may require the plaintiff or plaintiffs to pay to the defendant or defendants the reasonable expenses, including attorneys' fees, incurred by them in the defense of the action.") (quoting § 55-55(e)).

{29} In light of the similarity in the language and purpose of N.C. Gen. Stat. §§ 55A-7-40 and 55-7-46(2), the Court finds that it is likely that our appellate courts would apply the Court of Appeals' recent interpretation of "without reasonable cause" in the nonprofit corporation context in *McMillan* to the interpretation of that same phrase in the North Carolina Business Corporation Act at § 55-7-46(2). Accordingly, to determine whether Plaintiffs commenced and maintained their derivative action "without reasonable cause" for purposes of Defendants' Motions for Attorney's Fees under N.C. Gen. Stat. § 55-7-46(2), the Court will evaluate and determine whether Plaintiffs had a reasonable belief in a sound chance that their claims could be sustained.

{30} Turning then to Defendants' contentions, Defendants argue that because Plaintiffs acknowledged that the 2008 recession caused damage to the corporation in whose right the derivative claims were asserted – i.e., Lanness K. McKee & Company, Inc. ("McKee Craft") – and because Plaintiffs failed to offer evidence to support their ultimate theory that James had defrauded them, Plaintiffs could not have had a reasonable belief in a sound chance that their claims could be sustained. (Def. James's Br. Supp. Mot. for Atty.'s Fees, p. 8.) Further, Defendant Coconut Holdings contends that Plaintiffs knew they should not have included Coconut Holdings in this action based on the Court's finding that "the undisputed evidence of record does not reveal a dispute between McKee Craft and another business or consumers at large, but rather a dispute between Plaintiffs and James as co-owners of McKee Craft." (Def. Coconut Holdings's Br. Supp. Mot. for Atty.'s Fees, p. 6 (quoting *McKee v. James*, 2014 NCBC LEXIS 74 at *42).)

{31} The Court is unpersuaded by Defendants' arguments and concludes that on the current record Defendants are not entitled to attorney's fees under N.C. Gen. Stat. § 55-7-46(2).

{32} First, although Plaintiffs acknowledged that the 2008 recession may have contributed to McKee Craft's financial losses, Plaintiffs'

acknowledgement did not foreclose the possibility that Defendants' actions caused McKee Craft harm or constitute a conclusion that Defendants' conduct was neither a contributing cause nor a proximate cause of Defendants' alleged losses. In short, the Court does not find Plaintiffs' acknowledgement to equate to a concession by Plaintiffs that their claims were without merit.

{33} Second, Defendants argue that Plaintiffs could not have advanced their claims with reasonable cause in light of the Court's conclusion that Plaintiffs had not proffered enough evidence to support their claim that "James intentionally misrepresented himself as an experienced, sophisticated investor, who sought to use his resources and experience to restore McKee Craft to profitability, when in fact James intended all along to take control of the Company, plunder its value and assets, and then use those assets to start a new boat manufacturing company, leaving Plaintiffs in his wake." (*McKee v. James*, 2014 NCBC LEXIS 74 at *27.) Although the Court concluded that Plaintiffs' claims relying on these allegations were properly dismissed, the Court nonetheless also observed that Plaintiffs had put forth "evidence indicating that James marketed himself as willing and able to turn around McKee Craft's business, but then failed to do so, [which could] reflect[] puffery, [but] not actionable fraud." (*Id.* at *27–28.) While the Court ultimately concluded that Plaintiffs' evidence did not show more than puffery, the Court cannot find, based on the complete record that Plaintiffs did not have a reasonable belief in a sound chance that their claims could be sustained. *See McMillan*, 753 S.E.2d at 378.

{34} Finally, as to Defendant Coconut Holdings's separate contention, Coconut Holdings was made a party to this action based on Plaintiffs' claim that Coconut Holdings could be held liable for James's conduct under a piercing the corporate veil theory. The Court dismissed Plaintiffs' claims against Defendant Coconut Holdings, however, because the Court concluded that since Plaintiffs' claims against James could not be sustained, the Court was also required to dismiss Plaintiffs' claims against Coconut Holdings, as

those claims depended on Plaintiffs' success in an underlying claim against James. *McKee v. James*, 2014 NCBC LEXIS 74 at *43–44. Thus, the fact that the Court dismissed Plaintiffs' claims against James does not compel a conclusion that Plaintiffs' claims against Coconut Holdings, as James's alleged alter ego, were filed without reasonable cause to believe that the claims could be sustained.

{35}    In sum, the Court's conclusion that Plaintiffs did not bring forward sufficient evidence to survive Rule 56 dismissal does not equate to a finding that Plaintiffs did not have reasonable cause to bring or maintain their claims in these circumstances. Based on a complete review of the record, the Court cannot conclude that Plaintiffs did not have a reasonable belief in a sound chance that their claims could be sustained, and therefore, cannot find that Plaintiffs commenced and maintained their derivative action without reasonable cause. Accordingly, the Court declines to exercise its discretion to award Defendants their attorney's fees under N.C. Gen. Stat. § 55-7-46(2).

ii.  <u>N.C. Gen. Stat. § 66-154</u>

{36}    Defendants next argue that they are entitled to recover their attorney's fees pursuant to N.C. Gen. Stat. § 66-154, which provides that "[i]f a claim of misappropriation [of a trade secret] is made in bad faith . . . the court may award reasonable attorneys' fees to the prevailing party." N.C. Gen. Stat. § 66-154(d) (2014). *See Bruning & Federle Mfg. Co. v. Mills*, 185 N.C. App. 153, 647 S.E.2d 672, *cert. denied*, 362 N.C. 86, 655 S.E.2d 837 (2007) ("[A] trial court may only award attorneys' fees to the prevailing party '[i]f a claim of misappropriation is made in bad faith or if willful and malicious misappropriation exists,' pursuant to N.C. Gen. Stat. § 66-154(d).").

{37}    Although the North Carolina appellate courts have not written extensively concerning "bad faith" under § 66-154(d), "the North Carolina Court of Appeals has stated succinctly that a finding of bad faith does not follow simply because a claimant proceeded with legal malice so long as the claimant had 'a good faith belief that the suit has legitimate basis.'" *Velocity*

*Solutions, Inc. v. BSG, LLC*, 2015 NCBC LEXIS 54 at \*21 (N.C. Super. Ct. May 26, 2015) (quoting *Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 158, 555 S.E.2d 281, 294 (2001)). In *Velocity Solutions*, Judge Gale provided an in-depth review of the proper standard to apply when a court is required to determine whether a claim for misappropriation of trade secret is brought in "bad faith." *Id.* Ultimately, Judge Gale found "no indication that our appellate courts would require a determination of subjective bad faith in contrast to the objective standard of Rule 11," and concluded on the facts of that case that plaintiffs should not be sanctioned under either standard. *Id.* at \*21–22. *See generally*, *Reichhold Chems.*, 146 N.C. App. at 158, 555 S.E.2d at 294 ("[T]he fact that a [misappropriation of trade secret claim] was brought with malicious intent does not exclude the possibility of a good faith belief that the suit has a legitimate basis.") (citing *United Laboratories*, 322 N.C. 643, 663, 370 S.E.2d 375, 388 (1988)).

{38} Here, Defendants contend that Plaintiff proceeded in bad faith because this Court (Murphy, J.) concluded in dismissing Plaintiffs' derivative claim for misappropriation of trade secrets that "Plaintiffs failed to allege any facts tending to demonstrate that Plaintiffs implemented reasonable efforts to protect the secrecy of [their alleged trade secrets]." *McKee v. James*, 2013 NCBC LEXIS 33 at \*38–39 (N.C. Super. Ct. July 24, 2013); *see* (Def. James's Br. Supp. Mot. for Atty.'s Fees, p. 8).

{39} Defendants ignore, however, that Judge Murphy also found that Plaintiffs had sufficiently identified "what Plaintiffs believe[d] constitutes the trade secret," and that Plaintiffs had alleged that McKee Craft's financial records may have been password protected – suggesting an effort by Plaintiffs, albeit nominal, to maintain secrecy of some of their confidential information. *Id.* at \*39. While Judge Murphy ultimately concluded that Plaintiffs failed to plead that they sufficiently protected the confidentiality of their alleged trade secret, this Court does not find, based upon a review of the complete record, that Plaintiffs' claim for misappropriation of trade secret

was brought in bad faith or for an improper purpose. *See Velocity Solutions*, 2015 NCBC LEXIS 54 at \*24 ("A failure to comply with Rule 12 does not necessarily equate to a violation of Rule 11 or a transgression sanctionable under section 66-154(d).").

{40} In sum, the Court finds, after a careful consideration of the complete record, briefing, and relevant authorities, that Defendants have not met their burden to prove that sanctions should be imposed under § 66-154(d) and therefore concludes that Defendants' motion for attorney's fees under this section should be denied. *See id.* at \*26 ("Defendants have the burden to prove to the Court that it should impose sanctions under . . . section 66-154(d).").

### iii. N.C. Gen. Stat. § 75-16.1

{41} Defendants also contend that they are entitled to attorney's fees under N.C. Gen. Stat. § 75-16.1, which authorizes the Court to "allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party," upon a finding that "[t]he party instituting the action [under G.S. 75-1.1] knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2) (2014). "A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of [it]. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *McKinnon*, ____ N.C. App. at ____, 745 S.E.2d at 350 (quoting *Blyth v. McCrary*, 184 N.C. App. 654, 663 n.5, 646 S.E.2d 813, 819 n.5 (2007)). "The award of attorneys' fees under section 75-16.1 . . . is within the sound discretion of the trial judge." *Castle McCulloch, Inc. v. Freedman*, 169 N.C. App. 497, 504, 610 S.E.2d 416, 422 (2005) (citing *Borders v. Newton*, 68 N.C. App. 768, 770, 315 S.E.2d 731, 732 (1984)).

{42} Defendants argue that because Plaintiffs were unable to produce evidence of Defendants' alleged unfair and deceptive acts or practices after five years of litigation, Plaintiffs knew or should have known their action for

damages under N.C. Gen. Stat. § 75-1.1 was frivolous and malicious. (Def. Coconut Holdings's Br. Supp. Mot. for Atty.'s Fees, p. 7.)

{43}    The Court is again unpersuaded. Based on a review of the complete record, Defendants have not offered evidence to establish, and the Court cannot conclude, that Plaintiffs' § 75-1.1 claim was "wrongful and done intentionally without just cause or excuse or as a result of ill will" or that Plaintiffs were unable to present a "rational argument based upon the evidence or law" in support of their claim. *McKinnon*, ____ N.C. App. at ____, 745 S.E.2d at 350 (quotation omitted). As a result, the Court cannot conclude that Plaintiffs "knew, or should have known, the action was frivolous and malicious," as required for an award of attorneys' fees under N.C. Gen. Stat. § 75-16.1(2).

{44}    Accordingly, the Court concludes that Defendants are not entitled to attorney's fees under N.C. Gen. Stat. § 75-16.1.[6]

IV.

CONCLUSION

{45}    For the foregoing reasons, the Court hereby **ORDERS** as follows:

    i.   Defendant Coconut Holdings's Verified Bill of Costs is **GRANTED** and Defendant Coconut Holdings shall be awarded its costs in the total amount of $3,169.90;

    ii.   Defendant Coconut Holdings's Motion for Attorney's Fees is **DENIED**;

---

[6] Defendant James also contends that Plaintiffs' failure to negotiate a settlement in good faith warrants an award of attorney's fees under N.C. Gen. Stat.§ 75-16.1(1). (Def. James's Br. Supp. Mot. for Atty.'s Fees, p. 10.) § 75-16.1(1), however, provides that when "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit," an award of attorney's fees may be warranted. N.C. Gen. Stat. § 75-16.1(1). Here, Defendants are "the party charged with the violation" of § 75-1.1, not Plaintiffs. Therefore, Plaintiffs' alleged failure to negotiate a settlement in good faith does not permit an award of attorney's fees under § 75-16.1(1). *See Birmingham v. H&H Home Consultants & Designs, Inc.*, 189 N.C. App. 435, 442–44, 658 S.E.2d 513, 518–19 (2008) (when defendants are the "prevailing party" on a plaintiff's § 75-1.1 claim, the applicable standard to apply in deciding whether to award attorney's fees is § 75-16.1(2), not the "lower standard of an 'unwarranted refusal' to resolve the case" found in § 75-16.1(1)).

iii. Defendant James's Motion for Verified Bill of Costs is **GRANTED in part** and **DENIED in part**, and Defendant James shall be awarded his costs in the total amount of $28,382.65;

iv. Defendant James's Motion for Attorney's Fees is **DENIED;**

v. Plaintiffs shall pay Defendants the costs awarded in this Order and Opinion no later than 60 days from the date hereof.

{46}    **SO ORDERED**, this the 6th day of August, 2015.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases